# In the United States Court of Federal Claims

No. 98-126C
(Filed June 26, 2003)

| | |
|---|---|
| YANKEE ATOMIC ELECTRIC COMPANY, Plaintiff, | * |
| v. | * |
| THE UNITED STATES, Defendant. | * |

## ORDER [1/]

Following the decision in *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336 (Fed. Cir. 2000) proceedings in this matter have been devoted to completing extensive pretrial proceedings. Plaintiff has submitted comprehensive damage schedules and, pursuant to the applicable pretrial orders, defendant retained an expert accounting firm to examine and audit the extensive books and records supporting the items and figures submitted by plaintiff. Plaintiff has recently submitted substantially increased claimed damage amounts and defendant is presently proceeding to audit and examine the books and records supporting these new figures. Responding schedules identifying items and figures in dispute will then be submitted by defendant. The parties have also provided lists of trial witnesses and exhibits. Very extensive document discovery has been completed and some seventy-five depositions have been taken to date in connection with pretrial preparation activity. Final pretrial submissions are now due at the end of September with a trial to follow shortly thereafter.

Defendant has, however, taken several defenses it has cited in pretrial proceedings to date in this matter and asserted them in the format of motions for summary judgment. These motions are: Defendant's Motion for Partial Summary

---

[1/] (This should also be deemed applicable in *Connecticut Yankee v. United States*, No. 98-154 C and *Maine Yankee v. United States*, No. 98-474 C).

Judgment Regarding the Rate of Spent Nuclear Fuel Acceptance, filed November 9, 2001; Defendant's Motion for Partial Summary Judgment Regarding Plaintiff's Greater than Class C Radioactive Waste Arguments, filed November 7, 2001; and Defendant's Motion for Summary Judgment Upon Count III of Plaintiff's Complaint [Taking Claim], filed November 14, 2001.

Responses by plaintiff to these motions were deferred to conform to the schedule for pretrial submissions plaintiff was required to submit. Defendant has, however, more recently, filed the same motions in most of the pending cases, brought by other utilities, but involving the same breach of contract liability established in *Maine Yankee.*

By the Order, filed April 14, 2003, accelerated action was prescribed for the resolution of certain of these filings, including those motions filed by defendant in this case.

A decision on these three motions as filed by defendant in *Commonwealth Edison Co. v. United States,* No. 98-621 C, was issued on June 10, 2003.

In the *Commonwealth Edison Co.* opinion, the court denied defendant's motion concerning the rate of Spent Nuclear Fuel ("SNF") Acceptance, ruling that damages need not be limited by the quantities of SNF which had been submitted on a delivery commitment schedule ("DCS"). The Court's well reasoned ruling in *Commonwealth Edison Co.* on this issue of rate of SNF acceptance is adopted here. The determination of the rate of acceptance, to the extent this will impact on the amount of damages claimed, is thus in dispute and must be resolved by evidentiary proceedings.

The instant case differs from *Commonwealth Edison Co.* in one aspect. Plaintiff's facility is shut down and is in the process of decommissioning. The standard contract in Article VI B1(b) provides that "... priority may be accorded any SNF and/or HLW removed from a civilian nuclear power reactor that has reached the end of its useful life or has been shut down permanently for whatever reason." However, the pretrial evidence indicates that there has been no decision to apply this priority. Plaintiff's damages are premised on a relatively quick pick-up of all its SNF and/or HLW after the commencement date of January 31, 1998. Thus the considerable costs of storage and security incurred, and to be incurred, after the

assumed pick-up is complete are claimed as damages. Given the age of plaintiff's SNF, this assumed early pick-up completion could be accomplished only by the application of a shut-down priority or by use of "exchanges" authorized by Article V E of the standard contract. There are disputes over material facts underlying the bases for the use of "exchanges" with other utilities having older SNF in order to obtain an earlier assumed pick-up for damage measurement purposes. In the unlikely event evidentiary proceedings produce a conclusion that plaintiff's damage approach requires the development of a pick-up schedule for all SNF and/or HLW from all utilities covered by a standard contract, including a number of utilities not now before the court, the parties have been placed on notice that the court reserves the option of invoking the primary jurisdiction doctrine. That is, in the unlikely event that such a comprehensive multi-year SNF pick-up schedule were required in order to determine damages, the Department of Energy, by rule making equivalent to that which resulted in the *Indiana Michigan Power Co. v. United States Department of Energy*, 88 F.3d 1272 (D.C. Cir. 1996) and *Northern States Power Co. v. Department of Energy*, 128 F.3d 754 (D.C. Cir. 1997) decisions, could be requested for the purpose of developing such a schedule and a report of the result to the court for use in this litigation. *See United States v. Western Pac. R. R.*, 352 U.S. 59, 63-64 (1956); *Reiter v. Cooper,* 507 U.S. 258, 268-69 (1993); Louis L. Jaffe, *Primary Jurisdiction*, 77 HARV. L. REV. 1037 (1964). The request would be initiated by the use of the call procedure set forth in 28 U.S.C. § 2507(a). Reservation of this primary jurisdiction option is in recognition that the Court of Federal Claims is not an agency tasked with developing a comprehensive schedule for SNF pick-up, whereas the Department of Energy has this responsibility under the contract at issue and related legislation. The Court takes evidence, reviews all damage proof and determines the amounts that are attributed to the failure to commence SNF and/or HLW pick-up as of January 31, 1998. In no event would the Department of Energy determine damages, were primary jurisdiction to be invoked to obtain schedule and exchanges information.

Accordingly, the analysis and ruling with respect to defendant's Rate of Spent Nuclear Fuel Acceptance motion as set forth in *Commonwealth Edison* is adopted herein with the exception of the determination at Sl. Op. p.22 that there shall be no remand under primary jurisdiction doctrine. In the instant case that option shall remain open for consideration should further proceedings establish the need for it. As in the *Commonwealth Edison Co.* ruling, defendant's rate of SNF acceptance motion shall be denied.

Defendant's motion concerning plaintiff's Greater than Class C Radioactive Waste Arguments ("GTCC") as filed in *Commonwealth Edison Co.* is there denied. The Court determined that the issue of contract coverage with respect to GTCC is not ripe for judicial decision. Upon review of the substantial evidence cited by the parties it appears that, at present, defendant has the better argument as to the lack of a contract obligation for defendant to dispose of GTCC. Defendant does concede that it has a statutory obligation to dispose of GTCC, pursuant to The Low-Level Radioactive Waste Policy Amendments Act of 1985 ("LLRWPA"). Pub. L. No. 99-240 (codified at 42 U.S.C. §§ 2021b-2021i). There is no time specified for this disposal obligation.

However, even if it were to be determined that the contract at issue does not cover GTCC, the issue of the defendant's policy(ies) concerning GTCC removal is still relevant to the damage determination required in this case. This is because, in pretrial submissions, defendant indicates that the continued presence of GTCC on the plaintiff's shut down reactor site would require plaintiff to incur storage and security costs even if the SNF and/or HLW were assumed to have been removed as a result of a prompt commencement of pick-up activity no later than January 31, 1988. Accordingly, defendant proposes to utilize the continued presence of GTCC at plaintiff's reactor site to eliminate or reduce the damages that plaintiff attributes to the failure to remove SNF and/or HLW. There are material disputes of fact concerning the Department of Energy's policy, or lack of policy, concerning its LLRWPA obligation to assume custody of GTCC. Plaintiff asserts the evidence will show that the Department of Energy would not leave GTCC on a reactor site after removing all SNF and/or HLW. Defendant disputes this contention. To the extent that it is necessary to resolve the GTCC policy issue in order to determine the extent of damages attributed to the failure to commence SNF and/or HLW removal by January 31, 1988, evidentiary proceedings are required. Thus, for the reasons cited in *Commonwealth Edison Co.* and because, in any event, material facts are in dispute, defendant's GTCC motion shall be denied.

With respect to defendant's motion for summary judgment upon Count III of plaintiff's Complaint, which asserts a Fifth Amendment taking claim, in *Commonwealth Edison Co.*, this same motion was granted, except as to GTCC waste, (Slip. Op. at pp 4-6). In *Detroit Edison Co. v. United States*, 56 Fed. Cl. 299 (2003), defendant's same taking motion was denied. Upon examination of the evidence cited by the parties, it is concluded that a dismissal of plaintiff's taking count would be

premature at this point in the proceedings. In *Cienega Gardens v. United States*, ___ F.3d ___ (No. 02-5050, June 12, 2003) the Federal Circuit held that a continued restriction on property owners' right to control their property resulted in a taking requiring compensation. Plaintiff asserts that depriving it of control of its reactor site by requiring use of the site for SNF and/or HLW and GTCC storage also results in a taking requiring compensation. Defendant counters that prior to the contract at issue, it had no obligation to dispose of plaintiff's SNF and/or HLW, therefore asserting that plaintiff's claim can only be for breach of contract. Citing *Florida Power & Light Co. v. Westinghouse Elec. Corp.*, 826 F.2d 239, 245-48 (4th Cir. 1987), *cert. denied,* 485 U.S. 1021 (1988), which details the understandings concerning the government's undertakings with regard to SNF from the inception of the "Atoms for Peace" program in the 1950's, plaintiff contests that the government's obligation to accept SNF and/or HLW is solely contract based. As set forth in *Detroit Edison*, to the extent that plaintiff's claim is contract based, taking recovery is precluded. However, defendant urges that GTCC is not covered by the contract at issue. If so, a continued presence of GTCC on plaintiff's site despite defendant's statutory obligation to dispose if it could, conceivably, form the basis for a taking claim. *See Beneson v. United States*, 212 Ct. Cl. 375, 548 F.2d 939 (1977). Taking issues are normally fact intensive and require evidentiary proceedings for their resolution. *See Yuba Goldfields, Inc. v. United States*, 723 F.2d 884, 887 (Fed. Cir. 1983). This case is no exception. The presence of issues regarding the government's long term policy with respect to the disposition of SNF and/or HLW, together with the fact that there is material on plaintiff's real property which should be removed pursuant to contract or otherwise, counsels against resolving the taking count in plaintiff's complaint prior to the conclusion of trial proceedings.

Accordingly, based on the above discussion, it is **ORDERED** that defendant's three motions, cited above, shall be **DENIED**.

James F. Merow
Senior Judge